UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

LINDA MACCAGNAN,

Plaintiff/Appellant,

v.

CHERRY CREEK SCHOOL
DISTRICT NO. 5, et al

Defendants/Appellees.

Case No. 25-1335

_____

Appeal from the United States District Court
For the District of Colorado
Civil Action No. 1:20-cv-3477-CMA-KAS

Honorable Christine M. Arguello, District Judge
_____

**ANSWER BRIEF**
_____

Holly E. Ortiz, Esq.
Mary B. Gray, Esq.
Semple, Farrington, Everall & Case, P.C.
1120 Lincoln Street, Suite 1308
Denver, CO 80203
Telephone: (303) 595-0941
Counsel for Defendants/Appellees

Oral Argument Requested

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................... i

TABLE OF AUTHORITIES ............................................................................ iii

NOTICE OF PRIOR OR RELATED APPEALS .................................................v

COUNTER-STATEMENT OF THE CASE ........................................................1

COUNTER-STATEMENT OF THE ISSUES ....................................................2

COUNTER-STATEMENT OF THE FACTS ......................................................3

   A.   The District hires Maccagnan. ................................................................3

   B.   Seigfried promotes Maccagnan to principal. ........................................3

   C.   The District hires Oehm Consulting to audit administrator salaries. ......4

   D.   Due to ongoing problems, the District transfers Maccagnan to serve as principal at High Plains Elementary School. ...............................................6

   E.   The CCEA conducts a listening tour at High Plains. ............................8

   F.   Seigfried demotes Maccagnan to AP for the 2020-21 school year. ..........9

   G.   Maccagnan retires from the District. ...................................................11

SUMMARY OF THE ARGUMENT ................................................................11

STANDARD OF REVIEW .............................................................................14

ARGUMENT ................................................................................................16

   I.   The District Court Properly Dismissed Maccagnan's EPA Claim. .........16

   II.   The District Court Properly Dismissed Maccagnan's §1983 Due Process Claim Because Maccagnan Received All the Due Process to Which She Was Entitled. .......................................................................................................21

      *1.   Maccagnan did not have a property interest in continuing employment as a principal.* ..............................................................................22

      *2.   Maccagnan received adequate due process prior to her demotion.* ........26

   III.   The District Court Properly Dismissed Maccagnan's §1983 Equal Protection claim against the District. ...........................................................28

**IV.    The District Court's Evidentiary Rulings During Trial Were Not an Abuse of Discretion.**........................................................................................**31**

   **A.    The Roybal Notes were not hearsay.** .......................................................**31**

   **B.    Maccagnan failed to preserve any argument that the district court abused its discretion by allowing testimony regarding male comparators.** **35**

   **C.    The district court properly excluded evidence regarding the demotion of Ryan Langdon who was not similarly situated to Maccagnan.** ..............**38**

**V.    The District Court Properly Dismissed Maccagnan's Title IX against the District and §1983 Equal Protection Claim against Seigfried, Perry and Smith pursuant to the Rule 50 Motion.** ...............................................................**41**

**CONCLUSION**.................................................................................................**46**

**STATEMENT REGARDING ORAL ARGUMENT** .........................................**46**

**Certificate of Compliance with Rule 32(a)** .................................................**48**

**Certificate of Privacy Redactions and Digital Submission** ...............................**49**

**CERTIFICATE OF SERVICE** .........................................................................**50**

# TABLE OF AUTHORITIES

## CASES

*Adamson v. Mulit Comm. Diversified Servs., Inc.,* 514 F.3d 1136, 1145 (10th Cir. 2008)......................................................................................... 14, 15

*Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664 (10th Cir.1998) ...............................15

*Aramburu v. Boeing, Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997).. 20, 21, 26, 38, 44, 45, 46

*Cnty. of Wash. v. Gunther*, 452 U.S. 161, 168 (1981).....................................17

*Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1339 (10th Cir. 1998)..........................41

*Draper v. Sch. Dist. No. 1, City and Cnty. of Denver*, 486 P.2d 1048, 1049 (Colo. 1971) ...............................................................................................23

*EEOC v. JettStream*, 878 F.3d 960, 964 (10th Cir. 2017) ......................... 35, 36, 38

*Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996)....................................42

*Hancock v. Trammell*, 798 F.3d 1002, 1011 n.3 (10th Cir. 2015)..........................35

*Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) ....................25

*Heutzenroeder v. Mesa County Valley Sch. Dist. 51*, 391 Fed. Appx. 688, 692 (10th Cir. 2010)................................................................................ 22, 23, 24, 26

*Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1261 (10th Cir. 2016)...............................................................................................15

*Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006) ..........18

*Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ...................................42

*Murrell v. Sch. Dis. No. 1, Denver*, 186 F.3d 1238, 1249−50 (10th Cir. 1999)................................................................................ 28, 29, 30

*Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) ............. 29, 30

*Riggins v. Goodman*, 572 F.3d 1101, 1109 (10th Cir. 2009)....................... 21, 22, 27

*Riser v. QEP Energy*, 776 F.3d 1191, 1200 (10th Cir. 2015)........................... 17, 18

*Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540 (10th Cir. 2014)...............39

*Sprague v. Thorne*, 129 F.3d 1355, 1364-65 (10th Cir. 1997) ...............................17

*Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007) ............................... 21, 22

*United States v. Bowser*, 941 F.2d 1019, 1021-22 (10th Cir.1991)..........................32

*United States v. Cestnik*, 36 F.3d 904, 906-07 (10th Cir. 1994); ......... 15, 16, 31, 34

*United States v. Freeman*, 816 F.2d 558, 563 (10th Cir.1987)................................32

*United States v. Trujillo*, 136 F.3d 1388, 1396 (10th Cir.1998).............................31

*United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008)....................35

*United States. v. Perrault*, 995 F.3d 748, 764 (10th Cir. 2021) ........................ 15, 34

*Vehicle Mkt. Research, Inc. v. Mitchell Int'l., Inc.,* 839 F.3d 1251, 1257

(10th Cir. 2016)............................................................................ 35, 36, 38, 43

*Welsh v. Tulsa*, 977 F.2d 1415, 1419-20 (10th Cir. 1997).........................................40

*Wheeler v. Sch. Dist. No. 20, Cnty. of El Paso*, 535 P.2d 206, 208 (Colo. 1975)...23

**STATUTES**

22-32-109(1)(f)(I), C.R.S.................................................................................29

C.R.S. § 22-63-202 ................................................................................. 22, 23

**RULES**

Fed. R. Civ. P. 50 ................................................................................. 2, 11, 15, 41

# NOTICE OF PRIOR OR RELATED APPEALS

There are no prior or related appeals to this case.

# COUNTER-STATEMENT OF THE CASE

Plaintiff/Appellant Linda Maccagnan was employed by Cherry Creek School District (the "District") as a principal from 2014 through June of 2020. In April 2020, after the vast majority of teachers in her building reported that they did not have confidence in Maccagnan's leadership, then-Executive Director of Elementary Education, Diana Roybal ("Roybal"), and then-Assistant Superintendent of Operations, Jennifer Perry ("Perry"), recommended to then-Superintendent, Scott Seigfried ("Seigfried"), that Maccagnan be demoted. Seigfried subsequently demoted Maccagnan for the 2020-21 school year. Maccagnan was assigned to serve as assistant principal at Altitude Elementary School ("Altitude") for the 2020-21 school year. However, she went on FMLA leave during the first week of the school year and did not return, retiring at the end of the year.

Maccagnan filed suit asserting claims against the District, Seigfried, Perry, Chief Human Resources Officer Brenda Smith ("Smith") and the District's Board of Education (the "Board")[1]. Defendants/Appellees moved for summary judgment on all of Maccagnan's claims. Maccagnan moved for summary judgment on her due process claim only. The district court denied Maccagnan's motion and granted Defendants/Appellees' motion in part. The district court dismissed all of

---

1 The District, Seigfried, Smith and Perry are referred to collectively as the Defendants/Appellees.

Maccagnan's claims except her Title IX claim based on her demotion against the District and her §1983 Equal Protection claim based on her demotion only against Perry, Siegfried, and Smith.

Trial was held from July 28 to July 31, 2025, on Maccagnan's two remaining claims. At the close of Maccagnan's case, Defendants/Appellees moved for dismissal of Maccagnan's two remaining claims pursuant to Fed. R. Civ. P. 50. The court granted Defendants/Appellees' motion.

Maccagnan timely appealed asserting that the district court erred in granting summary judgment with respect to her Equal Pay Act and Due Process claims only, made three erroneous evidentiary rulings during trial and erroneously granted the Defendants/Appellees' Rule 50 motion. For the reasons explained below, the district court's rulings must be upheld.

**COUNTER-STATEMENT OF THE ISSUES**

A.  **The District Court Properly Granted Summary Judgment as to Maccagnan's Equal Pay Act and Due Process Claims.**

B.  **The District Court Properly Admitted the Roybal Notes for the Effect They Had on Seigfried and Perry.**

C.  **The District Court Properly Admitted Testimony Regarding the Demotion of Male Administrators.**

D.  **The District Court Properly Excluded Evidence Regarding Ryan Langdon's Demotion because He Was Not Similarly Situated to**

Maccagnan.

**E. The District Court Properly Dismissed Maccagnan's Equal Protection and Title IX Claims Pursuant Fed. R. Civ. P. 50.**

## COUNTER-STATEMENT OF THE FACTS

**A. The District hires Maccagnan.**

The District hired Linda Maccagnan ("Maccagnan") in 1996. Appx. Vol. 7, 1717: 7-17. In 2001, she was assigned to be the Coordinator of On-Line Learning ("OLL Coordinator"). *Id*. The OLL Coordinator was paid pursuant to the teachers' salary schedule. *Id*. Maccagnan received her first administrator's license in 2008 and was selected to be the assistant principal ("AP") at Campus Middle School. *Id*.

**B. Seigfried promotes Maccagnan to principal.**

In September 2014, after the principal at Challenge School ("Challenge") left, Seigfried appointed Maccagnan as the Challenge Principal. Appx. Vol. 2 at 270. Maccagnan was paid as a middle school principal at Challenge because Challenge included middle school grade levels. Appx. Vol. 2 at 279, 316. Per the District's salary scale, principals earned a higher salary than APs. Appx. Vol. 2 at 302. Additionally, elementary school principals were paid less than middle school principals and middle school principals are paid less than high school principals because of the differences in duties and number of work days. Appx. Vol. 2 at 309.

3

Maccagnan struggled as principal of Challenge. Appx. Vol 2 at 271. Parents complained about her appointment to Challenge; her alleged misrepresentation of school data; her staffing changes; her elimination of full-day kindergarten; her taking money from a parent committee; her treatment of students; and her changes to the admissions process. Appx. Vol. 2 at 272. Siegfried supported Maccagnan at Challenging, directing parents to stop making false allegations about her. Appx. Vol. 2 at 275-276, 319-320. Maccagnan felt supported by her supervisors at Challenge, including Seigfried. Appx. Vol. 2 at 272, 275.

**C.      The District hires Oehm Consulting to audit administrator salaries.**

In 2017, the District hired a third-party firm, Oehm Consulting, Inc. ("Oehm"), to evaluate all District administrator salaries and create an equitable pay system for administrators that was in line with market values. Appx. Vol. 2 at 304-305, 308. The District provided Oehm with a spreadsheet that contained the administrators' names, salaries, years of relevant experience, educational credit pay, stipends received for serving large schools and their positions, but not their gender. Appx. Vol. 2 at 324-325, 327. Per the District's Administrator Handbook, relevant experience for principals and APs was limited to experience as a principal, AP, assistant to the principal ("A to the P"), COSA, dean or athletic/activities director. Appx. Vol. 2 at 315, 329-333. Experience as a Coordinator was not counted as

4

relevant experience. *Id.*

Oehm conducted a market analysis of salaries to set salary ranges and computed each administrator's salary based on years of relevant experience and position and made salary recommendations. Appx. Vol. 2 at 323-324. Oehm did not consider sex. Appx. Vol. 2 at 327.

The District initially provided Oehm information indicating that Maccagnan had 16.5 years' experience, which erroneously included her experience as a Coordinator, not just her <u>relevant</u> experience. Appx. Vol. 2 at 312-313, 334-335. Upon discovering the error, the District had Oehm correct her experience to accurately reflect that Maccagnan had 11 years of relevant experience: six years as an AP, four years as a principal, and an anticipated year as a principal for 2018-19. *Id.* Maccagnan never served as a COSA, an A to the P, an athletic/activities director or a dean. Appx. Vol. 2 at 292.

Oehm provided a revised spreadsheet that reflected Oehm's recommended salary for each administrator based on their position and years of relevant experience. Appx. Vol. 2 at 322, 334-335. Oehm recommended that the salary be increased for administrators that they identified as underpaid based on their salary ranges and recommended that administrators who were identified as overpaid remain the same for the next year. Appx. Vol. 2 at 334-335. Per Oehm's salary ranges, Maccagnan

was overpaid based on her position and relevant experience, so Oehm recommended that her salary remain the same for the 2018-19 school year. *Id.*

The District adopted all of Oehm's recommended salaries. Appx. Vol. 2 at 311. The Board did not review or approve individual administrator salaries. Appx. Vol. 2 at 338. The District provided a number of communications to employees regarding the salary survey results. Appx. Vol. 2 at 293, 306-307, 339-432.

**D.  Due to ongoing problems, the District transfers Maccagnan to serve as principal at High Plains Elementary School.**

In the spring of 2018, after receiving angry messages from a parent, Maccagnan requested that she be reassigned to a different school than Challenge. Appx. Vol. 2 at 273, 277. Maccagnan was assigned to serve as Principal of High Plains for the 2018-19 school year. Appx. Vol. 2 at 278. When then-Executive Director of Elementary Education Chris Smith met with Maccagnan to discuss her reassignment, he told her that High Plains was operating well, did not need any changes and that she needed to perform well because there would be "no Challenge to blame" if she had problems. *Id.*; Appx. Vol. 2 at 318, 278. Although elementary school principals made less than middle school principals and High Plains was an elementary school, the District did not reduce Maccagnan's salary when she was transferred, meaning she continued to be paid as a middle school principal. Appx.

Vol. 2 at 279.

Maccagnan began working as High Plains' Principal in July 2018; then-Executive Director of Elementary Education, Diana Roybal, was her supervisor. Appx. Vol. 2 at 279. Maccagnan returned as High Plains Principal for the 2019-20 school year. Appx. Vol. 2 at 280. Roybal, who met and spoke regularly with Maccagnan to provide her with support and feedback, began to develop concerns about Maccagnan's performance during that year. Appx. Vol. 2 at 281, 284, 344, 346, 347-349, 433-435.

Roybal, Siegfried, and the Board began receiving complaints about Maccagnan from staff and parents. Appx. Vol. 2 at 297, 346, 385-396. Staff also began to complain to the teachers' union, the Cherry Creek Education Association ("CCEA"), asserting that Maccagnan did not listen or communicate decisions to them, failed to include them in the decision-making process and was not visible in the school. Appx. Vol. 2 at 398-399. Roybal provided coaching for Maccagnan including continuing to meet with her; giving her suggestions on how to connect with staff; attending meetings with angry parents and staff; assisting in developing plans to address concerns; and bringing in District-level leaders to provide input and support. Appx. Vol. 2 at 358.

Maccagnan texted Roybal in November 2019 and asked to meet. Appx. Vol.

2 at 357, 400. Roybal tried to encourage her, stating, "You are doing such great work and you are a brilliant leader. I am sure great things are in store for High Plains." *Id*. Maccagnan responded, "Some are not feeling the same and I just want to pick your brain." *Id*.

**E.     The CCEA conducts a listening tour at High Plains.**

In December 2019, after receiving numerous complaints about Maccagnan, CCEA conducted a "Listening Tour" at High Plains. Appx. Vol 2 at 401-403. CCEA representatives met with 65 High Plains staff, including almost every teacher, special services providers, paraprofessionals, and clerical staff. *Id*. Staff reported that the climate and culture of the building were "fractured"; there was division in the building; there was a negative building atmosphere; there was a lack of a relationship with the principal; there was a "lack of collaboration"; "micromanagement"; they had fear of retaliation by Maccagnan; they did not feeling valued, trusted or heard by her; and there was a lack of visibility in the building by Maccagnan. *Id*.

The CCEA met with Maccagnan, Director of Human Resources Joy Ross, and Roybal in January 2020 to review the results and discuss a plan to move forward. Appx. Vol. 2 at 274-275. Maccagnan denied the legitimacy of the concerns and accused the staff (who were primarily female) of gender stereotyping. Appx. Vol. 2 at 285-286.

Roybal kept her supervisor, Perry, updated on the ongoing concerns with Maccagnan's performance. Appx. Vol. 2 at 351. Roybal and Perry met with Maccagnan in early March 2020 to discuss ongoing concerns with her performance. Appx. Vol. 2 at 287. Perry asked Maccagnan if her relationship with her staff could be repaired, and Maccagnan stated she did not know. Appx. Vol. 10 at 2279:5-12. Perry offered Maccagnan a position in the District's Assessment Office. Appx. Vol. 2 at 405. Maccagnan refused the position and continued to work as High Plains Principal. Appx. Vol. 2 at 287; Appx. Vol. 7 at 1717:15-17; Appx. Vol. 8 at 1916:8-12.

On March 11 and 13, 2020, at the direction of Perry, Roybal met with High Plains staff members to see if there had been any improvement in the High Plains culture and climate. Appx. Vol. 2 at 351; Appx. Vol. 10 at 2517-2530. The majority of the feedback was very critical of Maccagnan's leadership. *Id*. Staff indicated that the situation was not reparable and that Maccagnan was not a good fit for High Plains. Appx. Vol. 10 at 2517-2530.

**F.      Seigfried demotes Maccagnan to AP for the 2020-21 school year.**

Based on the feedback, Roybal concluded that Maccagnan had lost the trust and confidence of her staff and that the relationship between staff and Maccagnan could not be repaired. Appx. Vol. 1 at 353-354. Roybal sent a copy of the notes of

9

her meetings with staff (the "Roybal Notes" or "Notes") to Maccagnan and asked her to review them. Appx. Vol. 2 at 287. The next day, Roybal called Maccagnan to discuss the Notes. *Id*. Maccagnan told her the comments were misstatements and mischaracterizations of her work. *Id*.

Perry reviewed the Roybal Notes, which were deeply concerning to her; she believed based on the Notes that that it would be "almost impossible" for Maccagnan to continue as Principal. Appx. Vol. 9 at 2180-2206, 2209:3-23. The Roybal Notes were a significant factor in Perry's decision to recommend that Maccagnan be demoted. Appx. Vol. 9 at 2209:7-9. Perry also considered the results of the December 2019 Listening Tour, various complaints from High Plains parents and staff, threatened grievances and a grievance that had been filed by a teacher named Groves. Appx. Vol. 9 at 2210, 2217:18-24, 2218:2-4, 2220:11-25, 2224:4-14. Perry recommended to Seigfried that Maccagnan be demoted; Seigfried reviewed the Listening Tour, Roybal's Notes, the complaints and the grievance, and based on the evidence, he demoted Maccagnan for the 2020-21 school year. Appx. Vol. 9 at 2097:20-25, 2098:1-25, 2100:8-25, 2101:1-5; Appx. Vol. 2 at 288.

In April 2020, Roybal, Perry and Smith met with Maccagnan to notify her that she was being demoted to an AP for 2020-21 school year. Appx. Vol. 8 at 1916:5-11. Perry asked Maccagnan to finish the 2019-20 school year as High Plains

Principal. Appx. Vol. 8 at 1916:5-20; Supp. Appx. at 25-27. Ex. 6.

Maccagnan was assigned to Altitude Elementary School for the 2020-21 school year. Appx. Vol. 8 at 1717:16-17. *Id*. Maccagnan's salary, which was still that of a middle school principal, was not reduced to an elementary AP's salary. Appx. Vol. 2 at 289; Appx. Vol. 8 at 1917:18-20. The District hired Unique Cooper, a woman, to replace Maccagnan at High Plains. Appx. Vol. 8 at 1917:13-17.

## G.     Maccagnan retires from the District.

On August 7, 2020, Maccagnan took FMLA leave; she remained on leave for the rest of the school year. Appx. Vol. 8 at 1917:21-23; 1920:7-13;1922:9-13.  In February 2021, Maccagnan took advantage of the District's early separation program, which paid qualifying principals $75,000. Appx. Vol. 10 at 2310:11-24.

**SUMMARY OF THE ARGUMENT**

Maccagnan argues that the district court erred in (1) dismissing her Equal Pay Act ("EPA") claim and her §1983 Due Process claim pursuant to Appellees' Motion for Summary Judgment; (2) making three evidentiary rulings during trial; and, (3) dismissing her §1983 Equal Protection and Title IX claims pursuant to Appellees' Fed. R. Civ. P. 50 motion ("Rule 50 Motion"). Contrary to Maccagnan's arguments, the district court's decision must be upheld.

The district court correctly analyzed Maccagnan's EPA claim, dismissing it because the undisputed material facts showed that the reason Maccagnan's salary was less than a few male principals' salaries was entirely unrelated to her sex. The reason her salary was lower than some males was that her relevant experience was less than the male principals' relevant experience. The district court also properly dismissed Maccagnan's §1983 Due Process claim because Maccagnan did not have a protected property interest in continuing employment as a principal. Moreover, even if she had a protected property interest, her claim failed because she received more than adequate due process prior to her demotion.

The district court did not abuse its discretion in admitting the Roybal Notes. The Notes were not hearsay because they were not offered for the truth of the matter asserted; they were offered to show their impact on Perry, who considered the Notes in making the recommendation to demote, and Seigfried, who considered the Notes in making his decision to demote Maccagnan. The Notes are directly relevant to Maccagnan's claims and, contrary to Maccagnan's assertion, are not more prejudicial than probative merely because they undermine her sex discrimination claim. Moreover, any undue prejudice was mitigated by the fact that the district court offered Maccagnan the opportunity, which she did not take advantage of, to submit a limiting instruction for the Notes.

The district court did not abuse its discretion in admitting evidence regarding two demoted male principals because Maccagnan is the party that introduced that evidence. Nor was the court's consideration of evidence regarding the male comparators improper given that Maccagnan introduced the evidence in order to compare it to Maccagnan's demotion circumstances. Maccagnan cannot demonstrate that the district court abused its discretion by admitting or considering evidence that she introduced.

The district court did not abuse its discretion in excluding evidence regarding Ryan Langdon ("Langdon"), a male principal who was demoted two years after Maccagnan retired. Langdon was not similarly situated to Maccagnan because he did not have the same supervisor as Maccagnan nor was he demoted by the same decisionmaker as Maccagnan. Accordingly, he was not a valid comparator and the district court did not abuse its discretion in excluding evidence related to him.

The district court properly dismissed Maccagnan's §1983 Equal Protection claim against the District, Smith, Perry and Seigfried. The district court correctly determined that Maccagnan's §1983 claim against the District was subject to dismissal because Maccagnan failed to produce evidence showing that her constitutional rights were violated pursuant to an official District policy or custom. Nor did she produce evidence showing that the Board, the final policymaker for the

District, had any knowledge of any discrimination.

The district court properly dismissed the Equal Protection claim against Perry, Smith and Seigfried pursuant to the Rule 50 Motion because neither Perry nor Smith made the demotion decision and because there was no evidence showing that Maccagnan's sex was a factor in her demotion or that she was treated less favorably that any similarly situated male principals.

Because Maccagnan failed to produce evidence that her sex was a factor in her demotion, the district court properly dismissed Maccangnan's Title IX claim as well.

Lastly, the evidence shows that the district court properly considered evidence of alleged gender stereotyping and determined that, because Maccagnan's assertion that certain comments by staff constituted gender stereotyping was based entirely on her own subjective belief, they were insufficient to demonstrate sex discrimination. The district court correctly determined that Maccagnan's subjective belief that comments by staff, not Perry, Seigfried or Smith, were so insufficient that a reasonable jury could not find in Maccagananan's favor on her claims.

**STANDARD OF REVIEW**

This Court reviews the district court's decisions on motions for summary judgment de novo. *Adamson v. Mulit Comm. Diversified Servs., Inc.,* 514 F.3d 1136,

1145 (10th Cir. 2008). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." *Id.* "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* The moving party bears the burden of showing that no genuine issue of material fact exists. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670-71 (10th Cir.1998). If the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.*

The Court reviews dismissal pursuant to Fed. R. Civ. P. 50 de novo. *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1261 (10th Cir. 2016). "A party is entitled to JMOL only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law." *Id*. (internal citations omitted).

"Evidentiary rulings are committed to the discretion of the trial court," and are reviewed "only for abuse of discretion." *United States v. Cestnik*, 36 F.3d 904, 906-07 (10th Cir. 1994); *United States. v. Perrault*, 995 F.3d 748, 764 (10th Cir. 2021). Review is "more deferential where the evidentiary ruling concerns the admissibility of what is claimed to be hearsay evidence." *Cestnik,* 36 F.3d at 906-

07. The exclusion of evidence under Rule 403 "is within the sound discretion of the trial court, and will be reversed only upon a showing of a clear abuse of that discretion." *Id*. A trial court abuses its discretion when it "renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id*.

## ARGUMENT

Maccagnan's argument that the court erred in dismissing her claims pursuant to Defendants/Appellees' motion for summary judgment and the Rule 50 motion and abused its discretion in making three evidentiary rulings fail in light of the undisputed facts and law. As fully explained below, the district court's decisions were correct and must be affirmed.

## I.      The District Court Properly Dismissed Maccagnan's EPA Claim.

The district court correctly dismissed Maccagnan's EPA claim because the undisputed material facts showed that the reason Maccagnan's salary was lower than some male principals' salaries was due to the fact that her years of relevant experience were less than the relevant male principals' years of relevant experience. In so determining, the district court correctly analyzed Maccagnan's claim under the EPA burden shifting framework not, as Maccagnan asserts, a McDonnell Douglas analysis.

The district court correctly found that to sustain her claim, Maccagnan had to establish a prima facie case of EPA discrimination by showing that "(1) she was performing work which was substantially equal to that of the male employee(s) she has identified…(2) the conditions where the work was performed were basically the same; and (3) the male employee(s) were paid more under the same circumstances." Appx. Vol. 6 at 1508-1509, *citing Riser v. QEP Energy*, 776 F.3d 1191, 1200 (10th Cir. 2015); *see also Sprague v. Thorne*, 129 F.3d 1355, 1364-65 (10th Cir. 1997) (setting forth elements of EPA prima facie case). The district court then correctly stated that, if Maccagnan established a prima facie case, Defendants/Appellees bore the burden to show that the "pay disparity was justified by one of the four 'affirmative defenses' identified in the statute: '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" Appx. Vol. 6 at 1509, *citing Riser*, 776 F.3d at 1198 and *Cnty. of Wash. v. Gunther*, 452 U.S. 161, 168 (1981). To meet its burden, the District "must 'submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity.'" Appx. Vol. 6, 1509, *citing Riser*, 776 F.3d at 1198.

This Court has made it clear that the analysis used by the district court is the correct analysis. *Id.*; *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006). Indeed, although she argues that the district court applied the "wrong legal standard," Maccagnan cites to the same standard the district court used. Opening Brief, p. 26. The district court applied the EPA burden shifting framework to the undisputed facts and correctly determined that "Defendants met their burden to demonstrate that the pay disparity between Ms. Maccagnan and one or more higher paid male elementary school principals was based on a factor 'other than sex.'" Appx. Vol. 6 at 1510.

Maccagnan argues that the district court erred in determining that Defendants/Appellees' met their burden, claiming that there is a question of fact as to whether her OLL Coordinator experience should have been counted as relevant experience which would have resulted in Maccagnan making a higher salary. Maccagnan's argument must be rejected because she presented no evidence that any male elementary school principal was given relevant experience credit for Coordinator experience.

The record shows that the District defined "relevant experience" for all principals as experience as a principal, an AP, an A to the P, a COSA, a dean or an activities/athletic director. Appx. Vol. 2 at 315, 329-333. It is undisputed that

Maccagnan was given relevant experience credit for her years as both a principal and an AP. However, she was not given any additional relevant experience credit because she had no experience as an A to the P, a COSA, a dean or an activities/athletic director. Appx. Vol. 2 at 292. The District granted her 11 years relevant experience credit when placing her on the salary schedule, which is consistent with her experience as a principal and assistant principal. Significantly, the undisputed evidence is that no male principal was given relevant experience credit for Coordinator experience. Maccagnan was not entitled to relevant experience credit that no male principal was awarded, and the fact that the District did not count her Coordinator experience as relevant experience is simply not evidence of sex discrimination.

In an attempt to salvage her claim, Maccagnan asserts that a prior Human Resources employee told her, in 2007, he would "consider" giving her credit for her Coordinator experience if she decided to become a principal at some unidentified time in the future. Appx. Vol. 2 at 270. She also argues that her supervisor believed that her job duties as OLL Coordinator were similar to those of a principal. However, these assertions do demonstrate that her sex was a factor in her salary. Nor do they undermine the fact that no male was given relevant experience credit for Coordinator experience.

The relevant inquiry for Maccagnan's EPA claim is not whether Maccagnan believed that her Coordinator experience should have been counted as relevant experience. The relevant inquiry, with respect to giving credit for Coordinator experience for purposes of pay, is whether the District granted any male principal relevant experience credit for Coordinator experience. As the district court correctly found, there is no evidence that the District gave any male principal credit for Coordinator experience. Nor is there any evidence supporting Maccagnan's inference that the District's refusal to treat Maccagnan's Coordinator experience as relevant experience is in any way tied to her sex, and Maccagnan's subjective belief that the District did not give her relevant experience credit for a Coordinator position because of her sex is insufficient to overcome summary judgment. *Aramburu v. Boeing, Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997).

Moreover, the fact the fact that the District used the same pay setting criteria for men and women demonstrates that they treated Maccagnan like everyone else, basing the decision of where administrators were set on the salary scale on a factor other than sex. While Maccagnan may not agree with the District's decision not to count Coordinator experience as relevant experience, her disagreement does not mean that she was discriminated against because of her sex. Nor can she sustain her claim by arguing she was entitled to a benefit no male employee received.

Because the District presented unrefuted evidence that any pay disparity between Maccagnan's pay and that of some male principals who made more was based on a reason other than sex, namely relevant experience, the district court correctly dismissed Maccagnan's EPA claim. *Id*.

**II.    The District Court Properly Dismissed Maccagnan's §1983 Due Process Claim Because Maccagnan Received All the Due Process to Which She Was Entitled.**

The district court dismissed Maccagnan's due process claim, finding that Maccagnan received all the due process to which she was entitled prior to her demotion. Maccagnan asserts that the district court erred, arguing that District principals have a protected property interest in continuing employment because they have "continuing contracts." Maccagnan's argument must be rejected.

Courts engage in a two-step analysis to determine whether a plaintiff was denied procedural due process: "(1) did the employee possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Riggins v. Goodman*, 572 F.3d 1101, 1109 (10th Cir. 2009). A plaintiff has a property interest in a benefit only if she has a "legitimate claim of entitlement to the benefit, as opposed to a mere abstract need or desire or unilateral expectations." *Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007). Such an interest is created by independent sources such as statutes,

ordinances or contracts. *Id*. at 1078-79.

If a plaintiff has a property interest, she is entitled to "some kind of hearing" prior to being deprived of the property. *Riggins*, 572 F.3d at 1109. Such a hearing requires (1) oral or written notice of the charges against her; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to respond. *Id*. A full evidentiary hearing is not required prior to an adverse action. *Id*. Informal proceedings, such as pretermination warnings and an opportunity for a face-to-face meeting with supervisors or a limited conversation between an employee and her supervisor prior to the adverse action satisfy the due process requirements. *Id*.

> 1. *Maccagnan did not have a property interest in continuing employment as a principal.*

Maccagnan asserts that she had a protected property interest in her continued employment under both C.R.S. § 22-63-202 of the Teacher, Employment, Compensation and Dismissal Act ("TECDA") and under an alleged District practice of automatically continuing principal contracts. This Court has already rejected this very argument.

In *Heutzenroeder v. Mesa County Valley Sch. Dist. 51*, 391 Fed. Appx. 688, 692 (10th Cir. 2010) (unpublished), cited by the district court, the plaintiff principal asserted she was entitled to a continuing contract under TECDA and under the practices of the school district. This Court rejected her argument stating, "It is well-

settled that these [TECDA] statutory provisions do not provide tenure or other similar protections for principals and other administrators." *Heutzenroeder*, 391 Fed. Appx. at 692 *citing Draper v. Sch. Dist. No. 1, City and Cnty. of Denver*, 486 P.2d 1048, 1049 (Colo. 1971) and *Wheeler v. Sch. Dist. No. 20, Cnty. of El Paso*, 535 P.2d 206, 208 (Colo. 1975). Maccagnan points to no law to the contrary; nor can she do so. Maccagnan's unsupported assertion that TECDA granted principals continuing contracts must be rejected in light of both Colorado law and the prior holding of this Court.

Moreover, the section of the statute upon which Maccagnan relies does not grant principals a continuing contract. Section 22-63-202, C.R.S. sets forth the rules for terminating contracts for teachers and the chief academic officer depending on the timing and circumstances (i.e. unilateral termination, mutually agreed upon termination, etc.) of the termination and the damages that may accrue against the employee for last-minute unilateral termination. Maccagnan cannot show that she had a continuing contract by citing to a damages provision of the statute that does not provide for continuing contracts for principals or any other administrators.

The *Heutzenroeder* Court also rejected the plaintiff's argument that she had a property interest in continued employment because the school district had a practice

23

of "renewing" principal contracts, stating that plaintiff's "subjective belief that [such a practice] exists" was insufficient to sustain her claim, particularly in light of the fact that the District "unequivocally" denied that any such practice existed. *Id*. Here, Maccagnan's argument that the District had a practice of continuing principal contracts must be rejected because, other than her own subjective belief, there is no record evidence supporting her argument. *Id*.

As the district court correctly determined, Maccagnan was employed as principal pursuant to a series of separate one-year-only contracts. Appx. Vol. 2 at 430-432. Each contract has a specific start date and a specific end date, and nothing in the contracts indicates any expectation of automatic renewal. *Id*. This is because the District has no practice of continuing principal contracts. Appx. Vol. 2 at 298; Appx. Vol. 6 at 1253.

In an attempt to salvage her argument, Maccagnan asserts that a former member of the District's Board of Education (the "Board"), Kelly Bates ("Bates"), testified that "administrator contracts are rarely non-renewed." Maccagnan mischaracterizes the testimony of Bates. During Ms. Bates' deposition, Maccagnan's attorney asked her about principal "non-renewals," a term set forth by counsel not Bates. Bates responded, "Maybe that is for teachers…Maybe I'm confused." Appx. Vol. 6 at 1299. She then went on to testify that she was not aware

of any principals who were "non-renewed." *Id*. Maccagnan cannot rely on a Board Member's confusion about whether or not principals get non-renewed as evidence of a District practice of continuing contracts. Indeed, Bates could not recall any "non-renewed" principals because principals are employed pursuant to one-year contracts that end on a date certain; they are not non-renewed. Appx. Vol. 2 at 76, 298, 430-432; Appx. Vol. 6 at 1253. In any event, even if Maccagnan's characterization of Bates' testimony was accurate, the fact that principals are "rarely non-renewed" does not show that the District had a practice of continuing principal contracts, particularly in light of the District's unequivocal denial of such a practice.

Maccagnan also argues that various witnesses would have testified at trial that there was a practice of continuing contracts. Speculating about what evidence might come in at trial is insufficient to overcome summary judgment. *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) ("[t]o defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.").

Moreover, the witnesses at issue provided sworn statements that undermine Maccagnan's assertion regarding their testimony. One of the prospective witnesses, Chris Toliver ("Toliver"), stated in her declaration that principals, "by definition," were at-will employees. Appx. Vol. 5 at 1104. A second witness, Stacy Brandon,

had never worked as a District principal and made no statements regarding principal contracts. Appx. Vol. 5 at 1099-1100. The third, Alicia Pray, was also never a principal and had no knowledge of how the District handled principal contracts, having never discussed the issue with any District official. Appx. Vol. 5 at 1102-1103.

Maccagnan also argues that a wording change in principal contracts, made after she was demoted, shows that she had a continuing contract. The fact that the District clarified the principal contract language after Maccagnan's principal contract ended to ensure that all principals understood that they had no TECDA rights, does not give Maccagnan a property interest in an expired contract.

Because Maccagnan failed to produce any evidence outside of her own belief that she had a continuing principal contract, the district court properly dismissed her due process claim. *Heutzenroeder*, 391 Fed. Appx. at 692 (unpublished); *Aramburu,* 112 F.3d at 1409.

### 2. *Maccagnan received adequate due process prior to her demotion.*

Even if Maccagnan had a protected property interest in a continuing principal contract, the district court's dismissal of her due process claim must be affirmed because Maccagnan was provided with sufficient due process prior to her demotion.

Maccagnan was notified of the results of the CCEA Listening Tour and given the chance to respond in January 2020. Appx. Vol. at 1426:13-25; Appx. Vol. 3 at 633 She was also notified that the District had performance concerns in her mid-year evaluation and given the opportunity to respond to the evaluation both in writing and when she later met with Roybal. Roybal also provided Maccagnan with a copy of the Notes, asked her to review them, and met with her the next day to allow Maccagnan to respond to the allegations. Appx. Vol. 3 at 638:1-25, 639:1-3. Maccagnan stated she disagreed with the overwhelming negative feedback from her staff. *Id.*; Appx. Vol. 3 at 639:6-11. On April 16, 2020, Roybal and Perry met with Maccagnan again, presented her with their concerns and notified her of the decision to demote her for the next school year. Supp. Appx. at 25-27. Maccagnan, who was represented by counsel at that meeting, was again given the opportunity to respond. *Id.*

In short, Maccagnan was given sufficient notice of the allegations, the District's evidence regarding those allegations and an opportunity to respond. Accordingly, Maccagnan was given sufficient due process prior to her demotion. *Riggins*, 572 F.3d at 1109.

Because the undisputed evidence in the record demonstrates that Maccagnan did not have a protected property interest in her continuing employment as a

principal and that, even if she did, she received sufficient due process, the district court's dismissal of her due process claim must be affirmed.

### III. The District Court Properly Dismissed Maccagnan's §1983 Equal Protection claim against the District.

The district court correctly granted summary judgment as to Maccagnan's Equal Protection claim against the District, noting in its summary of the summary judgment order that all Maccagnan's claims had been dismissed except her Title IX claim against the District and her Equal Protection claim against Seigfried, Smith and Perry. Appx. Vol. 6 at 1525-1527, 1594-1596. After being notified that Maccagnan believed that her Equal Protection claim against the District survived summary judgment, the district court heard oral arguments on the matter. Appx. Vol. 7 at 1650-1653.

Maccagnan argued that because the district court determined that her Title IX claim survived summary judgment, her §1983 claim must also survive summary judgment, stating that she believed the elements of a Title IX claim and §1983 claim were the same. Appx. Vol. 7 at 1651:12-25,1652:1-6. However, as Defendants/Appellees pointed out, the elements of a Title IX claim are not the same as a §1983 claim because, unlike Title IX, there is no *respondeat superior* liability under a §1983 claim. Appx. Vol. 7 at 1652:17-25, 1653:1-21; *Murrell v. Sch. Dis.*

*No. 1, Denver*, 186 F.3d 1238, 1249−50 (10th Cir. 1999) (§1983 claim dismissed against the school district because there is no respondeat superior liability against a school district and plaintiff failed to allege any action pursuant to an official school district policy or custom); *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998)(no respondeat superior liability). Maccagnan did not address this argument either in oral argument or in her request for leave to file an interlocutory appeal, where she again raised the issue of the dismissal of the Equal Protection claim against the District. Nor does she address it in her Opening Brief. Appx. Vol. 7 fat 1584-1590. Accordingly, she has conceded the argument.

As the district court held, to sustain a §1983 claim against the District, Maccagnan was required to present evidence that her constitutional rights were violated pursuant to an official District policy or custom or by a final policymaker for the District. *Murrell*, 186 F.3d at 1249−50; *Pietrowski*, 134 F.3d at 1009. The final policymaker for the District with respect to employment decisions is the Board. *See* 22-32-109(1)(f)(I), C.R.S. Maccagnan cited to no evidence that the Board violated her rights. Nor can she do so as the Board members "were insufficiently knowledgeable of the facts tending to show disparate treatment" to impose liability on them. Appx. Vol. 6 at 1519-1520. Instead, Maccagnan based her claim against the District on the alleged discriminatory actions of Seigfried, Perry, and Smith.

Because there is no *respondeat superior* liability, Maccagnan was required to show that Smith, Seigfried, or Perry violated her constitutional rights pursuant to an official District policy or custom. *Murrell*, 186 F.3d at 1249−50; *Pietrowski*, 134 F.3d at 1009. Indeed, the district court correctly applied this very standard in its order denying Maccagnan's request for leave to file an interlocutory appeal. *See* Appx. Vol. 7 at 1594-1596. Citing to *Murrell*, 186 F.3d at 1249−50, the district court stated that a school district "may be found liable for a violation of the Equal Protection Clause if there is evidence of intentional gender-based discrimination by the School District in the form of an official custom or policy to discriminate." Appx. Vol. 7 at 1594-1596. Maccagnan failed to produce any evidence of, or even argue, that her Equal Protection rights were violated pursuant to an official District policy or custom. *Id*. Instead, Maccagnan "merely alleged generally that 'Defendants took these actions intentionally and willfully, knowing that they were unlawful or in reckless disregard of their unlawfulness.'" *Id*. The district court stated that "the Court expressly found that there was no evidence demonstrating that the [Board] had knowledge of any facts tending to show disparate treatment." *Id*. Accordingly, the district court reaffirmed its dismissal of Maccagnan's Equal Protection claim against the District. Maccagnan did not dispute the court's finding with respect to the Board members and never presented any evidence that her rights were violated pursuant to

an official policy or custom. Nor can she because the District has specific policies prohibiting sex discrimination. Appx. Vol. 3 at 621-622; Appx. Vol. 4 at 761, 810. Accordingly, the district court's dismissal of Maccagnan's Equal Protection claim against the District must be affirmed.

**IV.    The District Court's Evidentiary Rulings During Trial Were Not an Abuse of Discretion.**

Maccagnan asserts that the district court erred in admitting Exhibit 48, which contains the Roybal Notes; in admitting evidence regarding two male principals who were demoted for loss of confidence; and in refusing to admit evidence regarding a male principal, Ryan Langdon, who was demoted two years after Maccagnan retired. As fully explained below, the court's evidentiary rulings are not arbitrary, capricious, whimsical, or manifestly unreasonable; accordingly, they must be upheld. *Cestnik,* 36 F.3d at 906-07.

**A.    The Roybal Notes were not hearsay.**

The district court properly determined that the Roybal Notes were admissible because they were not, contrary to Maccagnan's objection, hearsay. Defendants/Appellees introduced the Roybal Notes for the effect they had on Perry and Seigfried, not for the truth of the matters asserted in the Notes, meaning they are not hearsay at all. *See United States v. Trujillo*, 136 F.3d 1388, 1396 (10th Cir.1998)

(FBI agent's testimony of a witness's description of a robber was not hearsay because it was offered as evidence of the focus of the investigation, not to prove the truth of the description); *United States v. Bowser*, 941 F.2d 1019, 1021-22 (10th Cir.1991) (officer's testimony that an informant told him the defendant had a gun and wanted to kill the officer was admissible to explain the officer's aggressive conduct toward the defendant and was not offered for its truth); *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir.1987) (testimony about informant's statements was admissible to show why the government undertook the investigation and was not offered for its truth).

The Roybal Notes were considered by Perry when she recommended that Maccagnan be demoted and by Seigfried when he made the decision to demote her. Appx. Vol. 9 at 2100:9-25, 2101:1-5, 2181:8; Appx. Vol. 10 at 2217:18-25, 2218:1-4, 2224:12-14. Indeed, Perry testified that the Roybal Notes were a significant factor in the decision to demote Maccagnan. *Id*. Her testimony was uncontroverted. Defendants/Appellees had a right to introduce evidence that they relied upon in making the demotion decision.

Maccagnan argues that it is "questionable" that the Roybal Notes were relevant because they are not dated or signed and they were prejudicial to her case. However, the Roybal Notes are dated. Appx. Vol. 9 at 2183:1-2; Appx. Vol. 10 at

2517. Additionally, Perry verified that the Notes were given to her by Roybal and were Roybal's notes of her interviews with the High Plains staff. Appx. Vol 9 at 2181:1-8, 2182:24-25, 2183:1-7. The district court correctly determined that "[Counsel] has laid an adequate foundation, demonstrating the document is what it purports to be. It's not being offered for the truth of the matter asserted. It's being offered for the effect on the listener and why they took the actions they took. It is not more prejudicial than it is probative, so the objection is overruled. 48 will be admitted." Appx. Vol. 9 at 2181:24-25, 2182:1-4.

Nor are the Notes unduly prejudicial. The fact that the Notes undermined Maccagnan's case does make them irrelevant or more prejudicial than probative. Because Maccagnan alleges that she was demoted because of her sex, the District is entitled to present the evidence that served as the basis for the demotion decision, including the Notes. The fact that the Notes are harmful to Maccagnan's case does not make them irrelevant or more prejudicial than probative. To the contrary, it makes them extremely relevant and probative. Moreover, the district court told Maccagnan she could submit a limiting jury instruction for the Notes, which would certainly have limited any prejudicial effect of the exhibit. Maccagnan never submitted the jury instruction. Appx. Vol. 9 at 2195:18-21; Appx. Vol. 10 at

2219:11-19. Maccagnan cannot claim undue prejudice when she failed to take the steps necessary to limit any prejudice.

Maccagnan also claims that the court erred in allowing counsel to question Perry about various parts of the Notes and the impact they had upon her because "it is hard to believe that a counsel's reading of negative comments for 25 pages of transcripts would not be highly prejudicial." First, undersigned did not read negative comments for 25 pages. As the record reflects, undersigned pointed out specific parts of the notes and questioned Perry as the impact those parts had upon her and why and whether certain statements constituted gender stereotyping. *See* Appx. Vol. 9 at 2181-2207. Such testimony is entirely appropriate. Moreover, Maccagnan did not object to the line of questioning. Instead, the court intervened, noting that it was waiting for an objection to the cumulative effect of the questioning, and since Maccagnan failed to assert one, the court directed counsel to move on, which counsel did. Appx. Vol. 9 at 2208:2-7. Maccagnan failed to preserve any argument that the testimony elicited about the exhibit was improperly prejudicial because, other than her hearsay objection, she did not object to the testimony while it was occurring.

Because the trial court's admission of the Roybal Notes was not arbitrary, capricious, whimsical, or manifestly unreasonable, the district court's ruling must be affirmed. *Cestnik*, 36 F.3d at 607-07; *Perrault*, 995 F.3d at 764.

**B.** **Maccagnan failed to preserve any argument that the district court abused its discretion by allowing testimony regarding male comparators.**

Maccagnan argues that the district court erred in "allowing evidence of two males who were not comparators." Maccagnan's argument fails because she is the party that introduced the evidence regarding those individuals. *EEOC v. JettStream*, 878 F.3d 960, 964 (10th Cir. 2017); *Vehicle Mkt. Research, Inc. v. Mitchell Int'l., Inc.,* 839 F.3d 1251, 1257 (10th Cir. 2016) ("'Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted.'"). The party who introduces the evidence "waives—rather than forfeits—any objection to its admission," meaning the Court "do[es] not consider the claim at all, even under the forgiving plain-error standard." *Vehicle Mkt. Research, Inc*., 839 F.3d at 1257, *citing Hancock v. Trammell*, 798 F.3d 1002, 1011 n.3 (10th Cir. 2015). The Court applies the waiver doctrine "where a party has invited the error that it now seeks to challenge." *Id*., *citing United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008).

During Maccagnan's examination of Seigfried, Maccagnan showed Seigfried a document, Exhibit 13, that listed principals that had been demoted and the reasons for the demotion. Appx. Vol. 9 at 2108:21-23, 2108:8-25, 2110:4-18, 2111:1-25, 2112:1-24, 2126:8-25. 2127:15-25, 2128:1-25, 2129:1-13. The court did not allow

the admission of the document but allowed Maccagnan to question Seigfried about it. Maccagnan specifically questioned Seigfried about the principals listed, asking him about the female versus male principals on the documents. Based on Maccagnan's questioning, Seigfried testified that four principals listed on the document, two male and two female, were demoted for a loss of confidence of the staff. In short, the evidence Maccagnan asserts was improperly admitted was admitted because she introduced it. She cannot demonstrate that the district court abused its discretion by admitting evidence that she solicited and that she did not object to during trial. *JettStream*, 878 F.3d at, 964; *Vehicle Mkt. Research, Inc.,* 839 F.3d at 1257. Indeed, she has waived any objection she may have had to the evidence. *Id*.

Maccagnan also argues that the district court erred in considering the two male administrators in ruling on the Defendants/Appellees' Rule 50 motion because they were not similarly situated to Maccagnan. Again, Maccagnan is the individual who introduced the evidence of these comparators and asked specific questions about them compared to females who were demoted; she cannot now object to the district court's consideration of that evidence. *Id*. Moreover, the record does not support Maccagnan's assertion that the court improperly considered two male comparators.

Maccagnan introduced evidence that three male principals were demoted for loss of confidence: the two males listed in Exhibit 13 that Siegfried testified about and a third male, T. Wynn, about whom Perry testified when Maccagnan's counsel asked her about him. Appx. Vol. 10 at 2254. There is no evidence in the record that two of these three males were not similarly situated to Maccagnan.

Maccagnan argues that the two males principals discussed by Siegfried are not similarly situated because they were demoted for loss of confidence plus additional conduct. It is undisputed that one of those two was demoted and ultimately fired because he lost the confidence of his staff and engaged in other misconduct. However, that is not so with the second individual. The second principal was demoted for loss of conduct and "performance issues." There is no indication in the record as to what the performance issues were. In order to show that the second principal was not similarly situated, Maccagnan should have introduced evidence demonstrating that the "performance issues" were not the same kind of performance issues that had been identified as part of the reason that Maccagnan lost the confidence of her own staff. As fully explained above, there was a great deal of evidence regarding concerns with Maccagnan's performance. In order to show that the second male comparator was not similarly situated to her, Maccagnan needed to present evidence showing that his "performance issues" were not similar to her own.

She did not. Maccagnan cannot rely on her own subjective belief that the second principal's performance issues were not similar to her own to support her assertion that he was not a similarly situated comparator. *Aramburu,* 112 F.3d at 1409.

As to Wynn, Perry's uncontested testimony was that he was demoted because he lost the confidence of his staff. Appx. Vol. 9 at 2177. When questioned as to the reason he lost the confidence of his staff, Perry clarified that it was because the staff became angry when they learned he engaged in a consensual romantic relationship while his wife was ill with cancer. *Id.* Significantly, Wynn's conduct was not a violation of any policies or rules; it just made his staff lose confidence in him. *Id.* Accordingly, he was demoted, just as Maccagnan was when she lost the confidence of her staff for issues that were not rule violations. *Id.*

In sum, the district court did not abuse its discretion in admitting and considering evidence that Maccagnan solicited during her examination of Perry and Siegfried. *JettStream*, 878 F.3d at, 964; *Vehicle Mkt. Research, Inc.,* 839 F.3d at 1257.

**C. The district court properly excluded evidence regarding the demotion of Ryan Langdon who was not similarly situated to Maccagnan.**

During trial, Maccagnan sought to introduce evidence that after a CCEA listening tour about the leadership of Ryan Langdon, Langdon was given a longer

period of time and more support than Maccagnan before he was demoted, arguing that the evidence showed the male principal was treated better than she was. The district court excluded the evidence, correctly finding that because Langdon had a different supervisor than Maccagnan, he was not similarly situated to her.

To be similarly situated, employees must share "a supervisor or decision-maker." *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540 (10th Cir. 2014). The record evidence shows that Langdon and Maccagnan did not share the same supervisor or decision-maker with respect to their demotions.

Langdon was demoted from his position as principal in 2023, over two years after Maccagnan and Seigfried retired from the District. Appx. Vol. 1 at 73. Langdon's direct supervisor was Executive Director of Elementary Education Derek Mullner, while Maccagnan's direct supervisor was Roybal. *Id*.; Appx. Vol. 7 at 1717:22-24. The superintendent who made the decision to demote Langdon was Superintendent Chris Smith. Appx. Vol. 9 at 2077:19-25, 2078:1-3. The superintendent who made the decision to demote Maccagnan was Scott Seigfried. Appx. Vol. 9 at 2094:17-25, 2097:13-14. Because Langdon had a different supervisor and a different decisionmaker than Maccagnan, he is not, as a matter of law, similarly situated to Maccagnan.

Maccagnan argues that Langdon and Maccagnan are similarly situated because the ultimate decisionmaker for both was the Board. Maccagnan's argument must be rejected. The evidence presented showed that Seigfried made the decision to demote Maccagnan, based on evidence gathered by Roybal. The decision to terminate Langdon was made by Smith, based on information gathered by Mullner. To the extent that the Board was a "decisionmaker" with respect to the demotions, the undisputed evidence is that they merely approved decisions made by Seigfried and Smith, making Seigfried and Smith the relevant decisionmakers for purposes of demotion.

Even if the Board was the relevant decisionmaker, there is no evidence that ,it was aware of any discrepancy in the manner in which the two demotions were handled. There is no evidence that the Board knew when the respective listening tours occurred compared to the demotion dates or what supports were provided to each principal prior to demotion. Maccagnan cannot show she was discriminated against by the "ultimate decisionmaker" where that decisionmaker did not know of the alleged different in treatment of her and Langdon because an intent discrimination is required to sustain an Equal Protection claim. *Welsh v. Tulsa*, 977 F.2d 1415, 1419-20 (10th Cir. 1997) (purposeful discrimination is an essential element of an equal protection claim).

40

Additionally, the decisionmaker with respect to what supports were given to each individual and the timing of the demotion recommendation was the immediate supervisor for each – Roybal for Maccagnan and Mullner for Langdon. Accordingly, Langdon is not similarly situated to Maccagnan because the decisionmakers for the demotion timing and support were not the same.

The district court did not abuse its discretion by excluding evidence regarding Langdon's demotion because Langdon was not similarly situated to Maccagnan.

**V.      The District Court Properly Dismissed Maccagnan's Title IX against the District and §1983 Equal Protection Claim against Seigfried, Perry and Smith pursuant to the Rule 50 Motion.**

Maccagnan argues that, as a result of the court's evidentiary rulings, the district court improperly dismissed her Title IX claim against the District and her 1983 claim against Seigfried, Perry and Smith. Maccagnan's argument fails as a matter of law.

Judgment as a matter of law is appropriate "if during a jury trial a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1339 (10th Cir. 1998), *citing* Fed. R. Civ. P. 50(a). "[A] court may grant the motion 'only if the evidence points but one way and is susceptible to no

reasonable inferences which may support the opposing party's position.'" *Id.*, *citing Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996).

The district court correctly granted the Rule 50 Motion as to Perry and Smith because neither of them made the decision to demote Maccagnan. Appx. Vol. 10 at 2350-2351. "Personal participation is an essential allegation in a §1983 claim." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Maccagnan does not address this ruling in her Opening Brief at all. Instead, she argues that the court's decision should be reversed because of the purportedly erroneous evidentiary rulings and the district court's alleged failure to consider evidence of stereotyping. Because Maccagnan has not contested the court's determination that the Equal Protection claim fails against Smith and Perry because they did not demote Maccagnan, the district court's dismissal should be affirmed.

The court's ruling dismissing the claim against Seigfried, Smith and Perry must also be affirmed because, taking the evidence as a whole and viewing all reasonable inferences in the light most favorable to Maccagnan, the record shows that no reasonable jury could conclude that Perry, Smith, or Seigfried violated Maccagnan's Equal Protection rights. The undisputed evidence at trial was that Seigfried made the decision to demote Maccagnan based on an abundance of evidence, including the Roybal Notes, parent and staff complaints, filed and

threatened grievances, and the results of the CCEA listening tour. There is no evidence that Seigfried's decision to demote, or Perry's recommendation to demote, was based on Maccagnan's sex. Nor is there any evidence that Smith, who only learned of the demotion after it had occurred, harbored any discriminatory animus against Maccagnan based on her sex. Indeed, the uncontroverted evidence was that Seigfried, the individual who made the demotion decision, had a pattern of promoting women, including Maccagnan, and that he supported her against parents at Challenge. Appx. Vol. 2 at 270, 275-276, 319-320. In fact, Maccagnan presented no evidence from which a reasonable jury could find that her sex was a factor in her demotion.

Maccagnan argues that the court's evidentiary rulings precluded her from showing that she was treated differently than Langdon. However, as explained above, Langdon was not similarly situated to Maccagnan. Maccagnan also argues that the district court improperly considered evidence of two male principals. As explained above, Maccagnan cannot claim error based on evidence that she introduced. *Vehicle Mkt. Research, Inc.*, 839 F.3d at 1257.

Moreover, Maccagnan failed to present evidence sufficient to support her claim, even without considering the male comparators. Maccagnan argues that she has shown discrimination because the only two principal who were demoted "solely"

for loss of confidence were female. However, the mere fact that Maccagnan and Toliver were female is insufficient to show that they were discriminated against because of their sex. Moreover, Toliver, who testified at trial, did not testify or even imply that she was demoted because of her sex. *See* Appx. Vol. 9 at 2052-2074. Maccagnan's subjective belief that sex was the reason for her demotion is insufficient to sustain her claim. *Aramburu,* 112 F.3d at 1409.

Maccagnan also argues that that the district court failed to consider evidence of sex stereotyping. Maccagnan is incorrect. The record reflects that the district court considered Maccagnan's assertion that she was subjected to stereotyping and found that her own subjective belief that comments constituted stereotyping was insufficient to sustain her claim.

None of the comments that Maccagnan claimed were sex stereotyping were made by any District official. Maccagnan cannot impute a discriminatory animus to Seigfried, Perry, Smith or the District by pointing to a few comments made by some of her subordinates. The comments that Maccagnan identified during trial as sex stereotypes were, per her own testimony, found in the union listening tour and were conveyed to her by staff, not Perry, Smith, or Seigfried. Appx. Vol. 8 at 1835-1837. In fact, Maccagnan testified that District administrators did not agree with those allegedly stereotypical comments, which certainly undermines her claim that

44

Defendants/Appellees based the demotion on any stereotypes. Appx. Vol. 8 at 1836-1837. Furthermore, Seigfried did not rely on the alleged stereotypical comments in the listening tour or that were conveyed by staff to Maccagnan to make the demotion decision. As fully explained above, Seigfried relied on numerous artifacts when making the demotion decision.

Moreover, Maccagnan admitted that her assertion that comments are sex stereotypes is based on her own subjective belief, stating she would have to have more context to know if the comments were really stereotypes. Appx. Vol. 8 at 1903-1904, 1956. Her subjective belief is insufficient to demonstrate any discriminatory animus, including gender stereotyping. *Aramburu,* 112 F.3d at 1409.

Nor do the comments identified by Maccagnan actually demonstrate any sex stereotype. For example, Maccagnan claimed she was told to be more nurturing and caring. However, when pressed about the alleged comment, she admitted that she construed comments about her "lack of communication" to mean that "women are supposed to be nurturing and explaining and caring." Appx. Vol. 8 at 1903:2-7. She testified that she believed that comments about her lack of inclusivity at staff meetings meant that "women are supposed to be caretakers, kind, collect -- you know, including everybody." Appx. Vol. 8 at 1903:24-25, 1904:1-7. Maccagnan admitted that she did not know what was meant by the comment but believed it was

stereotyping. *Id*. Maccagnan's assertion that gender-neutral staff comments somehow implicated a gender stereotype is based entirely on Maccagnan's subjective belief, which is insufficient to sustain her claim. *Aramburu,* 112 F.3d at 1409.

Because Maccagnan failed to present evidence from which a reasonable jury could find that she was demoted because of her sex, the district court dismissal of Maccagnan's Equal Protection and Title IX claim must be affirmed.

## CONCLUSION

For the foregoing reasons, Defendants/Appellees respectfully request that this Court affirm the District Court's evidentiary rulings and dismissal of Maccagnan's claims.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is necessary because this case involves novel issue of law, discussion of which likely would materially assist the Court.

Respectfully submitted this 25th day of February, 2026.

By: *s/ Holly E. Ortiz*
Holly E. Ortiz
Mary B. Gray
Semple, Farrington, Everall & Case, P.C.
1120 Lincoln Street, Suite 1308
Denver, CO 80203

Telephone: (303) 595-0941
hortiz@semplelaw.com
mgray@semplelaw.com

*Attorneys for Defendants/Appellees*

## Certificate of Compliance with Rule 32(a)

I certify that with respect to this brief:

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,096 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Times New Roman 14-point font.

Date: February 25, 2026

*s/ Holly E. Ortiz*
Holly E. Ortiz
Mary B. Gray
Semple, Farrington, Everall & Case, P.C.
1120 Lincoln Street, Suite 1308
Denver, CO 80203
Telephone: (303) 595-0941
hortiz@semplelaw.com
mgray@semplelaw.com

*Attorneys for Defendants/Appellees*

**Certificate of Privacy Redactions and Digital Submission**

I certify that with respect to this brief:

1. All required privacy redactions have been made in compliance with 10th Cir. R. 25.5.

2. Paper copies of the Answer Brief, to be submitted to the Clerk, are exact copies of this ECF submission.

3. This ECF submission was scanned for viruses with the most recent version of the commercial virus scanning program Datto EDR Agent, version 3.17.1.4537, updated January 29, 2026 and according to that program, is free of viruses.

Date: February 25, 2026

*s/ Holly E. Ortiz*
Holly E. Ortiz
Mary B. Gray
Semple, Farrington, Everall & Case, P.C.
1120 Lincoln Street, Suite 1308
Denver, CO 80203
Telephone: (303) 595-0941
hortiz@semplelaw.com
mgray@semplelaw.com

*Attorneys for Defendants/Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2026, I electronically filed the foregoing **ANSWER BRIEF** using the court's CM/ECF system which will send notification of such filing to counsel of all parties of record.